IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

In re:

WILFREDO CARDONA FIGUEROA,
ELBA IRIS AQUINO VEGA,

    Debtors

Case No. 99-16712 (GAC)

Chapter 7

WILFREDO CARDONA FIGUEROA,
ELBA IRIS AQUINO VEGA and their
conjugal partnership,

    Plaintiffs

    v.

BANCO BILBAO VIZCAYA-PUERTO RICO,

    Defendants

Adv. No. 04-00063

DECISION AND ORDER

The debtors filed a petition under Chapter 13 on December 9, 1999. The schedules listed the "net cash value" of $6,000.00 in an insurance policy with John Hancock Insurance Co., Policy No. 066753093, as property of the estate. The debtors claimed the policy as exempt and did not list any creditors as having a security interest in the policy. The debtors scheduled Banco Bilbao Vizcaya-Puerto Rico ("BBV") as having an unsecured claim in the amount of $173,238.50. Prior to the claims bar date, the debtors converted to Chapter 7.

The notice of the Chapter 7 bankruptcy case directed creditors not to file proofs of claim because it did not appear that there was any property available to pay creditors (dkt. #13). The notice

also indicated that if it later appeared that assets were available, creditors would be sent another notice with a deadline for the filing of proofs of claim. BBV did not file a proof of claim. On March 31, 2000, the Chapter 7 trustee filed a report of no distribution (dkt. #21). The debtors received their discharge on June 9, 2000 (dkt. #26), the trustee was discharged and the estate was closed (dkt. #27).

On May 12, 2004, the debtors filed this adversary proceeding, claiming that in September of 2004, the debtors filed the cash surrender form with John Hancock, requesting the cancellation of Policy No. 066753093 and payment of the liquidation value. The debtors learned that John Hancock had paid the $15,860.24 cash surrender value of the policy to BBV. The debtors indicated that they had no recollection of assigning the policy to BBV. The debtors request that BBV be ordered to turnover the proceeds pursuant to 11 U.S.C. § 524(a)(2).

BBV filed a motion for summary judgment (dkt. #6) and a memorandum of law in support of the motion (dkt. #5), claiming that the debtors had pledged the policy to it to secure a financial obligation (dkt. #5). BBV claims that it was a secured creditor and that it had a right to set off its debt against the proceeds of the policy. BBV also filed a statement of uncontested facts in support of its motion (dkt. #7).

The debtors filed an answer to the motion for summary judgment

2

contending that BBV did not have a valid security interest in the collateral because the loan documents did not specifically list the name of the insurance company and the number of the policy guaranteeing the loan. The debtors contend that the pledge was not properly identified in the loan contract. The debtors also argue that because BBV did not file a proof of claim, they did not have the opportunity to challenge its alleged secured status. The debtors indicate that BBV was scheduled as an unsecured creditor and that the policy was claimed as exempt. The debtors recognized that they were limited to exempting $8,625.00 of any unmatured life insurance contract pursuant to 11 U.S.C. § 522(d)(8).

At the pre-trial hearing in the adversary, the Court reopened the legal case (dkt. #11). The parties informed that no hearing was necessary and the Court took the matter under advisement. Thereafter, the Court entered an order requiring BBV to submit translations of the documents submitted in support of its motion for summary judgment (dkt. #12). BBV filed a motion submitting translations of the documents (dkt. #17).

The documents submitted by BBV show that the debtor, Wilfredo Cardona Figueroa ("Cardona") was the President of a corporation, Good Luck Auto Sales, Inc. ("GLAS"). Cardona entered into a loan agreement with BBV on May 10, 1995 for a line of credit in the amount of $300,000.00. As collateral for the loan, Cardona and his spouse, the co-debtor in this case, pledged a certificate of

3

deposit, their personal guarantees and life insurance over the life of Cardona for the amount of $200,000.00 endorsed in favor of BBV. No particular policy is identified in the loan agreement. On the same date, Cardona executed a letter of continuous guarantee. On May 24, 1995, Cardona made a collateral assignment of John Hancock life insurance Policy No. 66753093 in favor of BBV. The collateral assignment clearly indicates that Cardona is pledging the policy as security for a loan.

On January 3, 1997, by letter, BBV approved additional credit facilities to restructure the loan for GLAS. This includes as collateral, life insurance of Cardona for the total risk, without identifying a particular policy. The letter indicates that it is the formalization of the commercial loan and the letter was signed as accepted by Cardona. On March 24, 1997, John Hancock issued a letter to BBV stating that Policy No. 066753093 was current and endorsed in favor of BBV.

## DISCUSSION

A contract of pledge in Puerto Rico requires the following essential requisites:

> (1) That they be constituted to secure the fulfillment of a principal obligation.
> (2) That the thing pledged or mortgaged is owned by the person who pledges or mortgages it.
> (3) That the persons who constitute the pledge or mortgage have the free disposition of their property, and, should they not have it, that they are legally authorized for that purpose.

31 L.P.R.A. § 5001. Moreover, "it is necessary, in order to

4

constitute a contract of pledge, that the pledge should be placed in possession of the creditor or of a third person by common consent." 31 L.P.R.A. § 5021.

In the present case, the requisites for a contract of pledge were satisfied prepetition. The pledge of Policy No. 66753093 in favor of BBV was constituted to secure the fulfillment of a loan to Cardona and GLAS. Cardona was the owner of Policy No. 66753093 and he does not dispute that he had the free disposition of the property to pledge it to BBV. Finally, the life insurance policy remained in the possession of John Hancock with the recognition that it was pledged to BBV. The Court finds it irrelevant that the loan agreements listed life insurance over the life of Cardona as collateral, without specifically identifying the collateral, which Cardona actually pledged after the signing of the initial loan agreement. Thus, the Court concludes that BBV had a security interest in the life insurance policy. Because BBV was owed the amount of $173,238.50, which exceeded the $15,860.24 cash value of the policy, BBV had a secured claim against Policy No. 66753093 in the amount of $15,860.24.

The discharge injunction of 11 U.S.C. § 524(a)(2) specifically enjoins only actions seeking to enforce the debtor's personal liability. Stated another way, "a discharge extinguishes only *in personam* claims and generally has no effect on *in rem* claims against property." Cadle Company v. Schlictmann, 267 F.3d 14 (1st

5

Cir. 2001)(citing Doral Mortgage Corp. V. Echevarria, 212 B.R. 185 (B.A.P. 1st Cir. 1997)). Thus, a preexisting lien on property, remains enforceable against the property even after the individual's liability has been discharged. See Dewsnup v. Timm, 502 U.S. 410 (1992); Johnson v. Home State Bank, 501 U.S. 78 (1991).

"[N]othing in the Bankruptcy Code imposes an affirmative duty on a lienholder to assert its in rem rights prior to the debtor's securing of a discharge." Arruda v. Sears, Roebuck & Co., 310 F.3d 13, 21 (1st Cir. 2002). In order to extinguish or modify a lien during the bankruptcy process, the debtor must take the proper steps to avoid the lien. Id. (citation omitted). See also Doral Mortgage Corp. v. Echevarria, 212 B.R. at 187 (citation omitted). "Creditors who hold valid liens not avoided in the bankruptcy case are free to enforce those liens against their collateral after the debtor's personal liability has been discharged." Pratt v. General Motors Acceptance Corp. (In re Pratt), 324 B.R. 1, 6 (Bankr.D.Me. 2005).

In the present case, although the debtors scheduled BBV as an unsecured creditor, BBV was not obligated to file a proof of claim. The case was converted to Chapter 7 prior to the Chapter 13 claims bar date and the notice to creditors in the Chapter 7 case directed them not to file proofs of claim because it did not appear that they would receive a distribution. The debtors took no affirmative

action to avoid BBV's lien. Thus, BBV's lien against Policy No. 066753093 remained enforceable against the policy even after the debtors' personal liability had been discharged. Therefore, BBV did not violate the discharge injunction when it set off the debt against the policy after the bankruptcy case was concluded.

This result is not changed through the debtors' claim of exemption in the property. With certain exceptions not applicable here, the Bankruptcy Code provides that property claimed as exempt is not liable for a prepetition debt, except when a debt is secured by a lien. 11 U.S.C. § 522(c)(2). Thus, the Bankruptcy Code protects a secured creditor from losing its secured status through a debtor merely claiming an exemption in property subject to a lien.

Accordingly, there being no violation of the discharge injunction of 11 U.S.C. § 524(a)(2),

IT IS ORDERED that BBV's motion for summary judgment (dkt. #5) shall be, and it hereby is GRANTED. This adversary complaint is DISMISSED.

SO ORDERED.

San Juan, Puerto Rico, this 25th day of January, 2006.

s/ Gerardo A. Carlo
---
GERARDO A. CARLO
Chief, U.S. Bankruptcy Judge

7